**Charles F. FAIR, on behalf of himself and all others similarly situated, and Communications Workers of America, AFL-CIO, Plaintiffs,**

v.

**SOUTHERN BELL TELEPHONE & TELEGRAPH COMPANY, Defendant.**

**Civ. A. No. 12789.**

United States District Court,
N. D. Georgia,
Atlanta Division.

Feb. 2, 1971.

Adair, Goldthwaite, Stanford & Daniel, Atlanta, Ga., and Charles V. Koons, Kane & Koons, Washington, D. C., for plaintiffs.

Kilpatrick, Cody, Rogers, McClatchey & Regenstein, Atlanta, Ga., for defendant.

Lutz Alexander Prager, Washington, D. C., for Equal Employment Opportunity Commission, amicus curiae.

## ORDER STAYING FURTHER PROCEEDINGS

MOYE, District Judge.

In this suit brought under Title VII of the Civil Rights Act of 1964 (42 U.S. C. § 2000e), the complainants, a nonsupervisory male employee of defendant's plant department in Vero Beach, Florida, and the labor union collective bargaining representative of defendant's non-supervisory employees, allege sex discrimination in the maintenance of the company's pension plan in that "while female employees with 20 years' service may retire with service pensions at age fifty-five, male employees with twenty years' service must have reached the age of sixty before a service pension is granted", and "in like manner * * * while female employees with twenty-five years' service may retire with service pensions at age fifty, male employees with twenty-five years' service must

have reached age fifty-five before a service pension is granted."

The suit is brought as a class action on behalf of the individual plaintiff "and all other non-supervisory male employees of Southern Bell Telephone & Telegraph Company."

Responding to the complaint, the defendant served its motion to dismiss for lack of jurisdiction of the subject matter and/or for failure to state a claim upon which relief can be granted, a motion for stay and referral of issue for consideration by EEOC, and defendant also answered the complaint. The answer contains a counterclaim against co-plaintiff, Communications Workers of America, AFL-CIO, alleging in substance that the pension plan which is the subject matter of this action has been the subject matter of collective bargaining between the defendant and the co-plaintiff, as collective bargaining agent of defendant's non-supervisory employees, that "the plaintiff labor union has never proposed in any negotiation, either prior to or subsequent to the effective date of the Civil Rights Act of 1974, that the Plan be changed to provide the same retirement ages for male and female employees", and that "the provisions of the Plan have for many years constituted a part of the Collective Bargaining Agreement existing between the defendant and the plaintiff labor union, as exclusive bargaining agent for most of defendant's nonsupervisory employees * * *."

The plaintiffs subsequently moved for a stay and referral of the issues involved in this complaint for conciliation and an opportunity for voluntary compliance pursuant to § 706(e) of the Civil Rights Act of 1964 (42 U.S.C. § 2000e–5(e) ), which motion was granted by this Court on September 4, 1969, the Court requiring the parties to file reports at the end of a 60-day period indicating the results of such efforts at conciliation and voluntary compliance. While this period was subsequently ex-

tended by agreement of the parties, they reported to the Court on January 28, 1970, that, following conciliation efforts, it had been "agreed by the parties and EEOC [Equal Employment Opportunity Commission] that the matter could not be resolved by further conciliation efforts."

The thrust of the defendant's motion to dismiss the action for failure to comply with jurisdictional requirements is that neither the individual plaintiff, nor the union, is a "person aggrieved." As to the individual plaintiff, the defendant points out that plaintiff Fair:

"* * * was born on October 24, 1921, so that at the time of the filing of his charge with the EEOC he was 45 years of age and at the present time [October 8, 1969] he is 47 years of age. He is thus still well short of the earliest age to which a female employee with a maximum service period might request retirement subject to the approval of the administrative committee (Johnson affidavit).

The complaint shows (par. 3) that at the time of the filing of the complaint he continued in the employee of the defendant, and so far as appears this is still the case. Under the terms of the Plan itself, which is attached to the complaint as Exhibit 'A', he had no present vested rights or interest of any sort at the time of the filing of his charge with the EEOC and was not then and would not now be actually and immediately affected in any way by the differing retirement ages for male and female employees."

The defendant also pointed out that the plaintiff labor union had not filed a charge with the EEOC relating to the subject matter of the action and had not received written notification from the EEOC that it had been unable to accomplish voluntary compliance through conciliation. In this connection, however, the plaintiff labor union subsequently filed a complaint with the EEOC, and

received on April 3, 1970, the Commission's 30-day suit letter.

Thus the Court now has before it defendant's motions to dismiss for lack of jurisdiction and failure to state a claim. Also before the Court is the motion of the plaintiff, Communications Workers of America, AFL-CIO, to dismiss defendant's counterclaim for lack of jurisdiction of the subject matter and for failure to state a claim upon which relief can be granted, claiming among other things, that "there have been no EEOC charges filed against CWA in connection with the pension plan currently in effect for the employees of Southern Bell Telephone & Telegraph Company."

At the hearing on these motions on December 22, 1970, the Court requested further briefing as to the question of whether the employees who might be affected by an adjustment in the Company's pension plan would be indispensable parties to this action under the principleas set forth in Neal v. System Board of Adjustment, 348 F.2d 722 (8th Cir. 1965). Thereafter, the defendant filed a motion to dismiss for lack of indispensable parties, pointing out that, in addition to the male non-supervisory employees whom the individual plaintiff purports to represent as a class, a much larger group would be affected by any adjustments in the pension plan, including, particularly, the "much larger group of female non-supervisory employees, who are covered by defendant's Retirement Plan". The accompanying affidavit of N. R. Johnson, defendant's Vice-President of Personnel, shows that, as of September 30, 1970, there were 17,382 male non-supervisory employees working for defendant, but that a total of 60,249 employees "have identical rights and privileges under the Plan including the rights to service pensions and their entitlement thereto is governed by the same provisions as relating to age and length of service set forth in the Plan." Thus, there are over 40,000

employees of defendant who conceivably would be affected by adjustments in the pension plan and who are not now represented in this litigation. The plaintiffs, and also the EEOC, claim that these 40,000 employees are not indispensable parties to this litigation.

As indicated above, plaintiff Fair seeks herein to represent all of defendant's non-supervisory male employees. Thus, another matter which this Court must consider is whether this action may be maintained as a class action under Rule 23(c) (1), F.R.C.P. At the hearing on December 22, 1970, the court expressed some concern as to whether the plaintiff Fair, a non-supervisory male employee, properly can be a class representative in a suit such as this, when possibly there may be diverse interests as between the male employees and the female employees, and further, where the proper class possibly may include supervisory employees. The same problems exist even more acutely if the plaintiff union should seek to be the class representative in this litigation because of its fiduciary duty to represent impartially all of defendant's non-supervisory employees, male and female, which duty would, at least, be somewhat inconsistent with representing to the fullest only a single segment of those employees in adversary proceedings where the several segments may have diverse interests.

While telling us that "Title VII does not recognize" other employees as indispensable parties in this litigation, the EEOC further asserts that, in the event we find the pension plan system here unlawfully discriminates on the basis of sex, we must "restructure" it without regard to whether the other affected employees are parties to this litigation.

It is in this posture of the litigation that we note the plaintiff's suggestion (supplemental memorandum on behalf of plaintiffs served January 12, 1971, p. 5) that we "order CWA and Southern Bell to negotiate a new Pension Plan." And,

defendant, Southern Bell, states in its supplemental memorandum, served January 14, 1971 (pp. 7–8):

"Defendant has also filed herein an affidavit of N. R. Johnson to the effect that the entire present Collective Bargaining Agreement between defendant and plaintiff union, which by its terms refers to and in effect incorporates the Retirement Plan, is open for further collective bargaining to begin March 15, 1971. Such affidavit refers to the fact that extensive bargaining as to the Retirement Plan has occurred in the 1966 and 1968 bargaining sessions between the company and the union, and suggests the likelihood of union proposals in the approaching bargaining sessions as to changes in the Plan.

"It seems reasonable to anticipate that as a part of the negotiation of a new Collective Bargaining Agreement, there will be negotiations between the defendant and the plaintiff union as to changes in the Retirement Plan, and that one of the matters to be dealt with may be the question of adjustments in retirement ages to eliminate any possible discrimination as between male and female employees, in view of the contentions made by the plaintiffs in this suit.

"Under these circumstances, there would appear to be serious doubt as to whether it would be worthwhile to undertake in the present action, at least at this time, to accomplish appropriate representation of various interested groups of employees, who would be indispensable parties to any consideration in this Court of possible adjustments in the Plan's provisions which might be appropriate. The only individual party plaintiff to the present suit does not even contend that he has been, or will in the immediate future be actually damaged or affected in any way by the provisions of the Plan of which he complains."

Under the circumstances set forth above, it would appear to be a waste of judicial resources to proceed further with this litigation pending the imminent collective bargaining negotiations between defendant and the labor union plaintiff. While the Court does not feel that it is authorized at the present time to enter an order directing the parties to negotiate on this specific subject, absent concurrent motions for summary judgment or other procedural device invoking a full decision on the merits at this time, the Court can declare without hesitation that possible revision of the Pension Plan is a subject that ought to receive the greatest attention from the parties in their collective bargaining and that it is the Court's belief that voluntary agreement arrived at through such collective bargaining will be superior to an involuntary decision arrived at through litigation. Consequently, the Court will defer ruling on the various motions described above, and will stay further proceeding in this case pending further order of this Court.

The parties are directed to report promptly to the Court after it is determined (1) whether or not the contract negotiations between the parties will include pension plan issues; and (2) if such issues are to be included in said negotiations, what agreement is finally reached with respect thereto.